ELECTRONIC CITATION: 15 FED App 0003P (6th Cir.)
File Name: 15b0003p.06

**BANKRUPTCY APPELLATE PANEL OF THE SIXTH CIRCUIT**

| | | |
|---|---|---|
| In re: MICHAEL G. SHEPPARD; SHARON L. SHEPPARD, | ) ) | No. 14-8045 |
| Debtors. | ) ) | |

Appeal from the United States Bankruptcy Court
for the Middle District of Tennessee at Nashville.
Case No. 14-01645

Decided and Filed: July 9, 2015

Before: DELK, LLOYD, and OPPERMAN, Bankruptcy Appellate Panel Judges.

———————————

**COUNSEL**

ON BRIEF: Reba Brown, Emily H. Mack, LEWIS, THOMASON, KING, KRIEG & WALDROP, P.C., Nashville, Tennessee, for Appellant. M. Todd Jackson, JACKSON & ASSOCIATES, P.C., Franklin, Tennessee, for Appellee.

———————————

**OPINION**

———————————

**JOAN LLOYD**, Bankruptcy Appellate Panel Judge. In this appeal, Creditor Republic Franklin Insurance Company appeals the Bankruptcy Court's Order Denying Motion to Extend Time for Filing a Complaint to Determine the Dischargeablity of Debt and/or Filing an Objection to Discharge. The Bankruptcy Court held that the Creditor-Appellant had not met the threshold for "cause" under Fed. R. Bankr. P. 4004 and 4007(c). For the reasons set forth below, the Panel concludes that it was an abuse of discretion for the bankruptcy court to deny a timely Motion to Extend Time for Filing a Complaint. The Bankruptcy Court's ruling denying the Motion to Extend Time is reversed. The case is remanded for further proceedings consistent with this opinion.

## I.       ISSUE ON APPEAL

The issue on appeal is whether the Bankruptcy Court erred in denying Creditor Republic Franklin Insurance Company's Motion to Extend the Deadline for Filing by determining that the Creditor Republic Franklin had not provided the Bankruptcy Court with sufficient "cause" to justify an extension of the deadline for filing as provided by Fed. R. Bankr. P. 4004 and 4007(c).

## II.       JURISDICTION AND STANDARD OF REVIEW

The Bankruptcy Appellate Panel of the Sixth Circuit has jurisdiction to decide this appeal. The United States District Court for the Middle District of Tennessee has authorized appeals to the Panel, and none of the parties has timely elected to have these appeals heard by the district court. 28 U.S.C. §§ 158(b)(6), (c)(1). A bankruptcy court's final order may be appealed as of right pursuant to 28 U.S.C. § 158(a)(1). For purposes of appeal, an order is final if it "ends the litigation on the merits and leaves nothing for the court to do but execute the judgment." *Midland Asphalt Corp. v. United States,* 489 U.S. 794, 798, 109 S. Ct. 1494, 1497 (1989) (citation and quotation marks omitted). An order denying a motion to extend time is a final and appealable order. *See e.g.*, *Kohl v. Loefgren (In re Loefgren)*, 305 B.R. 288, 289 (W.D. Wis. 2003), *aff'd* 85 F. App'x 522 (7th Cir. 2003).

An order denying a motion to extend is reviewed under an abuse of discretion standard. "An abuse of discretion occurs only when the [bankruptcy] court 'relies upon clearly erroneous findings of fact or when it improperly applies the law or uses an erroneous legal standard.'" *(Bank One. N.A. v. Bever ( In re Bever)*, 300 B.R. 262, 264 (6th Cir. BAP 2003) (quoting *Corzin v. Fordu (In re Fordu)*, 209 B.R. 854, 857–58 (6th Cir. BAP 1997)). "We will find an abuse of discretion only upon a 'definite and firm conviction that the trial court committed a clear error of judgment.'" *Henderson v. Kisseberth (In re Kisseberth)*, 273 F.3d 714, 721 (6th Cir. 2001) (quoting *Logan v. Dayton Hudson Corp.,* 865 F.2d 789, 790 (6th Cir. 1989)).

## III.   FACTS

The following facts are undisputed:

In January 2003, Utica National Insurance Group ("Utica National") hired Debtor Michael Sheppard's law firm, Craft & Sheppard P.L.C., to pursue a subrogation action ("Original Action"). Utica National operated through its subsidiary, Creditor Republic Franklin Insurance Company ("Republic Franklin"). In January 2011, a settlement was reached and settlement proceeds totaling $145,000.00 were entrusted to Debtor's law firm, where Sheppard was the managing partner in the two-partner firm. Under the fee agreement made between Republic Franklin and the law firm, Republic Franklin was entitled to $130,740.03 of the award. This award was not distributed to Republic Franklin. In 2012, Republic Franklin retained the law firm Lewis, King, Krieg and Waldrop P.C. ("Lewis King"), to recover the proceeds of the settlement agreement from Sheppard and his law partner. Lewis King continues to represent Republic Franklin in this action (hereinafter "Appellant's Counsel").

On May 15, 2013, Republic Franklin initiated a fee dispute against Sheppard's firm. This fee dispute was resolved through arbitration. On October 28, 2013, the parties reached a settlement agreement in which Sheppard, his former law partner, and their law firm agreed to be jointly and severally liable for the settlement proceeds owed to Utica National. The award was to be paid out in two portions. The first payment, $60,000.00, was due on or before November 29, 2013. The second payment, $70,740.03, was to be paid on or before December 30, 2013. Both of these amounts were payable to "Utica National Insurance Group," specifically the Utica National regional office located in Atlanta, Georgia. This office was the same location that was listed in the Original Action and that worked with Sheppard's law firm originally. The Atlanta office also handles claims relating to its member companies, including Republic Franklin.

On December 11, 2013, Appellant's Counsel sent a letter to Sheppard informing him that while his partner had remitted $30,000.00 in keeping with the settlement agreement, Sheppard's portion, $30,000.00, had not been received by Utica National. At this point, emails began to be exchanged regularly regarding the overdue amount.

On January 30, 2014, Appellant's Counsel met with Sheppard to discuss the overdue settlement payments. Utica National had only received the $30,000.00 from Sheppard's former partner. Sheppard remains jointly and severally liable for the remaining $100,740.03.

On February 28, 2014, Michael G. and Sharon L. Sheppard filed a Voluntary Joint Bankruptcy Petition under Chapter 7. On the Summary of Schedules "UTICA National Insurance" is listed as a creditor, holding a $60,000.00 non-secured priority lien. The address listed for Utica National is its home office in New Hartford, New York.

On March 2, 2014, the Bankruptcy Court sent notice by first-class mail to all creditors, including Utica National. Notice was sent to the New York address of Utica National's corporate office. This notice informed creditors of the May 30, 2014 bar date by which creditors had to file a complaint or challenge the dischargeability of certain debts. No notice was sent to Appellant's Counsel or Republic Franklin about the bankruptcy.[1]

On May 21, 2014 Appellant's Counsel initiated an action in Tennessee State Court against the Debtor, unaware of the pending bankruptcy. Appellant's Counsel only had *actual* notice of the bankruptcy proceeding on May 28, 2014 when Debtor's bankruptcy attorney notified Appellant's Counsel that they should not have filed the suit due to the Debtor's pending bankruptcy. The next day, May 29, 2014, Appellant's Counsel filed a timely motion to extend the deadline for filing until July 30, 2014. This is the motion at issue in this case. The justification for the motion was that Appellant's Counsel only had two days prior to the May 30, 2014 deadline to file a complaint and simply would not have enough time to properly form the necessary legal arguments.

---

[1] Attached to Debtor-Appellee's reply brief is a letter from Sheppard to Appellant's Counsel dated March 6, 2014. Debtor-Appellee offers this document as evidence of a courtesy email informing Appellant's Counsel of the bankruptcy proceeding. Because this document was offered first on appeal and was not considered by the Bankruptcy Court, we need not consider the document. *See* Fed. R. Bankr. P. 8009(a)(4). The letter, however, does not actually inform the Appellant's Counsel of the bankruptcy, but rather states that Sheppard will "have to" file bankruptcy in the future. By this date, Sheppard *had* filed bankruptcy.

On July 8, 2014, the Bankruptcy Court held a hearing on the motion and determined that "cause [had] not been established adequately" to justify granting the motion. (Transcript of Hearing, 22-23). On July 29, 2014, a timely notice for appeal was filed.

## IV.    DISCUSSION

Federal Rule of Bankruptcy Procedure 4007(c) sets the specific time period for a creditor to make an objection under Section 523(c):

> (c) Time for Filing Complaint Under §523(c) in a Chapter 7 Liquidation, Chapter 11 Reorganization, Chapter 12 Family Farmer's Debt Adjustment Case, or Chapter 13 Individual's Debt Adjustment Case; Notice of Time Fixed.
>
> Except as otherwise provided in subdivision (d), a complaint to determine the dischargeability of a debt under §523(c) shall be filed no later than 60 days after the first date set for the meeting of creditors under §341(a). The court shall give all creditors no less than 30 days' notice of the time so fixed in the manner provided in Rule 2002. On motion of a party in interest, after hearing on notice, the court may for cause extend the time fixed under this subdivision. The motion shall be filed before the time has expired.

Fed. R. Bankr. P. 4007(c). Similar wording is found in Rule 4004, which references Section 727. The 60-day deadline is in place to further "two important bankruptcy policies: (1) the prompt administration of bankruptcy cases, and (2) the fresh start goal of bankruptcy relief." *In re Bolzt-Rubinstein*, 454 B.R. 614, 619 (Bankr. E.D. Pa. 2011). This can be a great relief to debtors seemingly surrounded with creditors they cannot satisfy. *See Lipsky v. Polinski (In re Polinski)*, BAP No. NC-07-1295-JuMkK, 2008 WL 8444830, at *3 (B.A.P. 9th Cir. Feb. 19, 2008) ("The short time limitation in which to file a nondischargeability complaint favors debtors, who can feel secure their creditor slate has been wiped clean and they can get on with their lives."). Creditors must act affirmatively to protect their rights. *See FDIC v. Meyer (In re Meyer)*, 120 F.3d 66, 69 (7th Cir. 1997) (creditors "file their complaints speedily or yield them forever.").

The 60-day period, however, is not absolute. The statute permits that a court may grant a timely request for an extension "for cause." Unfortunately, "cause" is not defined in the

Bankruptcy Code nor in the Bankruptcy Rules. The Sixth Circuit has held that the rule deadlines are not jurisdictional and may be subject to equitable defenses. *See Nardei v. Maughan (In re Maughan)*, 340 F.3d 337, 344 (6th Cir. 2003). *See also In re Polinski* at \*3 (citing *Young v. United States*, 535 U.S. 43, 49-51 (2002) and *Schunck v. Santos (In re Santos,* 112 B.R. 1001, 1006 (B.A.P. 9th Cir. 1990)).

This appeal depends on the definition given to "cause" in Rule 4007(c) as the motion in this case was timely filed. It hinges on whether "cause" should be construed narrowly or broadly. In the Sixth Circuit, discretion is given to the bankruptcy courts to determine the definition of "cause" on a case-by-case basis, but there is precedent that suggests the threshold for granting such motions should be set low. *See Brady v. McAllister (In re Brady)*, 101 F.3d 1165, 1171 (6th Cir. 1996), *reh'g denied* ("parties requesting such an extension still must demonstrate some minimally sufficient showing of cause for the extension"); *In re Witt*, 304 B.R. 340, 344 (Bankr. E.D. Tenn. 2003) ("The court entertains these motions routinely and grants them liberally. All that is required is some reason or cause for extending the deadline.").

Other jurisdictions follow the liberal standard of granting motions to extend the deadline. *See e.g. In re Santos*, at 1007 (courts should "liberally grant timely filed requests for extensions to the bar date where . . . the creditor has a valid and explainable suspicion regarding the existence of facts giving rise to a dischargeability cause of action."). Courts in other jurisdictions grant the motions routinely absent evidence of bad faith on the part of the moving creditor. *See In re Kellogg*, 41 B.R. 836, 838 (Bankr. W.D. Okla. 1984) ("Furthermore while there is little authority dealing with the 'for cause' requirement we believe extension should be granted liberally absent a clear showing of bad faith…."). *See also Matter of Amezaga*, 192 B.R. 37, 41 (Bankr. D. P.R. 1996); *Matter of James*, 187 B.R. 395, 397 (Bankr. N.D. Ga. 1995) ("[C]ourts seem unified in the view that the term 'for cause' should receive a liberal construction.")(citations omitted).

The Sixth Circuit has adopted a policy of freely granting motions that allow a case to be decided on its merits, not on technicalities and missed deadlines. The Sixth Circuit case of *Miller v. Am. Heavy Lift Shipping, et al.*, 231 F.3d 242 (6th Cir. 2000), supports the conclusion

that leave to amend should be generally granted and that the second amended complaint should be deemed to relate back pursuant to Rule 15(c)(2). The *Miller* Court noted that "whether a statute of limitations will be permitted to bar an amended claim turns on whether the amended claim arose out of the same conduct, transaction, or occurrence as that set forth in the original complaint…."*Id.* at 248 (citations omitted). Keeping in mind Miller's statement that "the thrust of Rule 15 is to reinforce the principle that cases 'should be tried on their merits rather than the technicalities of pleadings," and a court "will permit a party to add even a new legal theory in an amended pleading so long as it arises out of the same transaction or occurrence." *Id.* (citations omitted). These motions are routinely granted. Even though Rule 15 Leave to Amend is not at issue in this case, it is analogous to a Fed. R. Bankr. P. 4007(c) motion to extend a deadline for filing.

Debtor-Appellee attempts to argue that many courts construe the term 'for cause' narrowly but does not cite any specific cases where the court actually expressed this view. The cases referenced in the Debtor-Appellee's brief may have been instances where 'cause' was not found or the motion was not granted, but there is no support for the notion that bankruptcy courts should seldom grant these motions. *See In re Garner*, 339 B.R. 610, 611 (Bankr. W.D. Tex. 2006) (while the court wanted "compelling" grounds for granting the motion and a "good reason," this was in reference to the fact that the creditor in that case presented "no evidence at the hearing to support such a request."). Most of the cases cited instances where the creditors failed to properly exercise their rights and courts were unwilling to penalize the debtors by granting an extension merely to accommodate the lazy creditor. *See In re Desiderio*, 209 B.R. 342, 346 (Bankr. E.D. Pa. 1997) ("Therefore, we must conclude that Wausau failed to establish even a minimal amount of diligence which could possibly justify an extension under any standards."); *In re Grillo*, 212 B.R. 744, 747 (Bankr. E.D. N.Y. 1997) ("there can be no cause justifying an extension of time to object to discharge where the party seeking the extension failed to diligently pursue discovery prior to expiration of the deadline.")(citing cases).

The Bankruptcy Court seems to have decided to deny the motion in this case largely based on the fact that the corporate office, Utica National in New York, was given notice of the proceedings and that the notice to the corporate office was legally sufficient to put the Creditor-

Appellant on notice through a theory of constructive notice. Transcript of Hearing, 23-24 ("this is Utica's problem, not Michael and Sharon Sheppard's problem, and really a loss in or bad communication between the company and what counsel says is a division."). The standard for "cause," however, is not the same as the standard for notice with respect to the exactness of deadlines. Courts have acknowledged that notice is a factor in determining whether or not to grant an extension, but it is not the only factor to consider.

In the Sixth Circuit, five factors are considered when deciding whether to apply the doctrine of equitable tolling: "'The factors are (1) lack of actual notice of filing requirement; (2) lack of constructive knowledge of filing requirement; (3) diligence in pursuing one's rights; (4) absence of prejudice to the defendant; and (5) a plaintiff's reasonableness in remaining ignorant of the notice requirement.'" *In re Maughan*, 340 F.3d at 344 (citing *Andrews v. Orr*, 851 F.2d 146, 151 (6th Cir. 1988)). It is worth noting that in *In re Maughan,* the motion was granted despite the fact that the creditor had notice of the bankruptcy proceeding. *Id.* Obviously, notice as a factor alone is not determinative. In light of the fact that the motions should be granted liberally, it is worth applying these factors to the present case.

It is clear from the record that the Creditor-Appellant did not have *actual* notice of the case. The fact that they filed a motion in state court which would have obviously been barred by the bankruptcy proceeding weighs heavily in favor of the fact that the Creditor-Appellant is sincere in displaying its lack of *actual* notice of the bankruptcy proceeding. The Bankruptcy Court essentially decided against the motion based on the theory that Republic Franklin and Utica National in Atlanta received *constructive* notice when notice was sent to Utica National in New York.[2]

---

[2] It is worth noting that Creditor-Appellant contests whether notice was sufficient at all. Notice is sufficient if it is "reasonably calculated, under all circumstances, to apprise interested parties of the pendency of the action and afford them an opportunity to present their objections." *Mullane v. Hanover Bank & Trust Co.*, 339 U.S. 306 (1950) (citations omitted). Creditor-Appellant argues that reasonable notice can be analyzed by whether the creditor has time to take meaningful action in response to the impending deprivation of its rights and that this standard was not met. *See In re Walker*, 149 B.R. 511 (Bankr. N.D. Ill. 1992). This argument does not need to be decided here. Even if Creditor-Appellant had *constructive* notice, the lack of *actual* notice when viewed in light of the other factors, justifies granting the motion for an extension of time.

The day after Creditor-Appellant heard about the bankruptcy proceeding it filed a motion to extend the time to file an adversary proceeding. The fact that a motion to extend was filed the day after it found out about the bankruptcy proceeding displays a great deal of diligence and is clear evidence that the Creditor-Appellant was not trying to sit on its rights. It cannot be said that it was not diligent in pursuing the proper course of action. A lack of diligence would have been evidenced by complete inaction. *See Neely v. Murchison*, 815 F.2d 345, 347 (5th Cir. 1987) ("[at] the very least, Rule 4007(c) plainly requires that a creditor file his § 523(c) complaint, *or his motion for extension*" prior to the bar date.) (emphasis added).

Granting the request for an extension would not have unreasonably harmed the Debtor-Appellee. It is true that an extension of time does harm a debtor to some extent, but motions to extend are granted so frequently that, absent a showing of severe and real harm, the balance of the equities weighs in favor of granting a short extension of time.

In determining whether the plaintiff was reasonable in remaining "ignorant of the notice requirement" there must be some reasonable grounds on which the plaintiffs could rely in deciding not to act. *See Andrews v. Orr*, 851 F.2d at 152 (where the court determined that if a party does not take action during the notice period, there must be a reasonable justification for that party's inaction.). The Creditor-Appellant was ignorant of the notice requirement, but this ignorance was entirely reasonable. First, the Debtor-Appellee had dealt with the Creditor-Appellant only a month before the filing of the bankruptcy. The Debtor-Appellee knew that he was delinquent on a debt that he was being questioned about by Creditor-Appellant but chose not to inform the attorneys with whom he had recently been in contact of the bankruptcy filing. It is understandable that Creditor-Appellant and its legal team would assume that Debtor-Appellant would make a courtesy call informing them of the bankruptcy proceeding. In fact, this type of candor is encouraged routinely by bankruptcy courts. *See In re Williams* 51 B.R. 627, 629 (Bankr. S.D. Ohio 1985) ("the fact of representation, and the identity of the attorney, were known to the debtor and/or his attorney . . . inclusion of the name and address of the attorney in conjunction with the identity of the creditor must appear in the bankruptcy schedules."). Knowing that Creditor-Appellant was represented by counsel, it seems suspicious that neither Debtor-Appellee nor his attorney would inform it of the bankruptcy proceeding but instead

choose to send notice to a corporate hub far removed from the present situation. *See In re Grand Union Co.*, 204 B.R. 864 (D. Del. 1997) (the court concluded that notice sent to individuals known to the debtors to be represented by counsel was not satisfactory and that notice should have been sent to the attorneys themselves, not their clients).

## V. CONCLUSION

In conclusion, Motions to Extend the Deadline for Filing should be liberally granted when the circumstances merit such a finding. In the present case, there was sound justification for the Creditor-Appellant to request an extension of time. The short time between when the Creditor-Appellant had actual notice of the bankruptcy proceeding and the filing deadline meant that it would be nearly impossible for the Appellant's Counsel to determine what filings needed to be made to prevent the dischargability of Appellant's interests. Fed. R. Bankr. P. 4007(c) provides that an extension may be granted "for cause" and there is ample "cause" in the present case.

The bankruptcy court is reversed. This case is remanded for proceedings consistent with this opinion.